**NOT FOR PUBLICATION**            **CLOSED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| QING DI WANG,<br><br>       Petitioner,<br>  v.<br><br>JOHN CARBONE, et al.,<br><br>       Respondents. | Civil Action No. 05-2386 (JAP)<br><br>**OPINION** |

Appearances:

THEODORE N. COX
401 Broadway
Suite 1802
New York, NY 10013
    *Attorney for Petitioner*

CHRISTOPHER J. CHRISTIE
United States Attorney
NEIL R. GALLAGHER
Assistant U.S. Attorney
970 Broad Street, Suite 702
Newark, NJ  07102
    *Attorneys for Respondents*

PISANO, District Judge.

Currently pending is a Petition filed by Qing Di Wang ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The Court resolves this petition without oral argument, as permitted by Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court denies the Petition.

**I. Factual History**

Petitioner is a native and citizen of China.  (Petition ¶ 3; Answer at 1).  Petitioner entered the United States on or about August 18, 2000 at the Honolulu International Airport in Honolulu, Hawaii.  (Petition ¶ 6; Anderson Decl. ¶ 3).  Petitioner did not arrive with valid travel documents. (Petition ¶ 6; Anderson Decl. ¶ 3).  Petitioner was taken into custody and stated that he was seeking asylum.  (Petition ¶ 6; Anderson Decl. ¶ 3).  Respondents state that Petitioner was placed in removal proceedings by the Immigration and Naturalization Service.  (Anderson Decl. ¶ 3). On September 14, 2000, Petitioner was released from custody after posting a $75,000 bond. (Petition ¶ 6; Anderson Decl. ¶ 4).  Petitioner states that he filed a series of motions to change venue from Seattle, Washington to New York, New York, but that these motions were denied, as were appeals taken by the Petitioner.  (Petition ¶¶ 6-7).

Petitioner and Respondents appear to be in agreement as to the underlying facts until the time that Petitioner was released on bond in September 2000.  From that point until April 12, 2005, Petitioner simply does not address the facts in his Petition other than to suggest that the procedural history is "complicated."  (Petition ¶ 7).  On April 4, 2002, Petitioner was ordered removed in absentia by the Immigration Judge.  (Anderson Decl. ¶ 5; Anderson Decl. Ex. B (Warrant of Removal/Deportation)).  On April 26, 2002, Petitioner filed a motion to reopen the

1

proceedings, which was denied by the Immigration Judge on May 23, 2002. (Anderson Decl. ¶ 6). Respondents state that, on July 2, 2002, through the bonding company Petitioner was advised to report for removal. (Anderson Decl. ¶ 6). Petitioner did not so report and on July 16, 2002, a Notice of Immigration Bond Breach was sent to the bonding company. (Anderson Decl. ¶ 7; Anderson Decl. Ex. C (Notice of Immigration Bond Breach)). The Petition acknowledges that Petitioner's bond was forfeited by the Department of Homeland Security. (Petition ¶ 7). Petitioner either surrendered or was delivered at the Elizabeth Detention Center by the bail bondsperson. (Anderson Decl. ¶ 8; Anderson Decl. Ex. D (Body Receipt/Certificate of Surrender)).

On January 28, 2003, a travel document request was sent to the consulate General of China. However, Petitioner refused to complete the required Chinese application form and, as a result, the travel document request was sent without it. (Anderson Decl. ¶ 9). On February 6, 2003, Petitioner was served with a "Warning for Failure to Depart" form, Form I-229(a). (Anderson Decl. ¶ 10; Anderson Decl. Ex. E (Form I-229(a))). According to Respondents, Petitioner actively refused to cooperate in providing a fingerprint and a signature and had to be physically restrained to be fingerprinted. (Anderson Decl. ¶ 10). Also on February 6, 2003, Petitioner was placed in a Special Housing Unit for failure to comply and engaging in disruptive behavior. (Anderson Decl. ¶ 11). As a result of these incidents, Petitioner was served with a Failure to Comply Notice on March 14, 2003. (Anderson Decl. ¶ 12; Anderson Decl. Ex. F (Notice of Failure to Comply)).

On May 19, 2003, Petitioner filed a Petition for Review with the United States Court of Appeals for the Nine Circuit, which then stayed Petitioner's removal. (Anderson Decl. ¶ 13).

The Ninth Circuit denied the Petition for Review on September 27, 2004 and issued the Mandate on November 19, 2004. (Petition ¶ 7; Anderson Decl. ¶ 15). Petitioner has filed two petitions for writs of habeas corpus in this court. The first was filed on August 24, 2004 and is docketed as Civil Action No. 04-4048 (JAG). (Anderson Decl. ¶ 14). The second is the instant petition, which was filed on May 5, 2005 and is docketed as Civil Action No. 05-2386 (JAP).

On January 28, 2005, Petitioner was served a second time with a "Warning for Failure to Depart" form, Form I-229(a). (Anderson Decl. ¶ 16; Anderson Decl. Ex. G (Form I-229(a))). Not until April 12, 2005 did Petitioner complete travel document forms for the Chinese Embassy. (Anderson Decl. ¶ 16). The Chinese Consulate completed an interview of Petitioner at or about that time. (Anderson Decl. ¶ 17). Petitioner states that he filed a Request for Release on April 12, 2005, which, at the time of the filing of his Petition on May 5, 2005, had not been responded to or granted. (Petition ¶ 9).

On May 10, 2005 Petitioner was placed on a list for special flights arranged for the removal of aliens by the Department of Homeland Security. (Anderson Decl. ¶ 18). On July 21, 2005, an updated presentation, including Petitioner's original birth certification documents, was made to the Chinese Consulate for Petitioner's travel document. (Anderson Decl. ¶ 19). On August 25, 2005, Petitioner was interviewed via telephone by a Chinese consular officer. (Anderson Decl. ¶ 20).

On September 12, 2005, the Department of Homeland Security reviewed Petitioner's case, presumably in response to Petitioner's April 12, 2005 Request for Release referenced above, and determined that in light of Petitioner's completion of his travel document forms and interview in April, "it now appears likely that the Chinese authorities will issue a travel

document on [his] behalf, and therefore [his] removal is imminent." (Anderson Decl. ¶ 21; Anderson Decl. Ex. H (Decision to Continue Detention)). Moreover, the Department of Homeland Security determined that Petitioner had not established that he was not a flight risk. (Anderson Decl. ¶ 21; Anderson Decl. Ex. H (Decision to Continue Detention)). Accordingly, the Department of Homeland Security denied Petitioner's release. (Anderson Decl. ¶ 21; Anderson Decl. Ex. H (Decision to Continue Detention)).

The Department of Homeland Security Officer charged with this case, Michael Anderson, reports that he has been informed by the Chinese consular officer who interviewed Petitioner telephonically that the matter has been submitted to the Chinese government and the consular officer is awaiting a response. (Anderson Decl. ¶ 22). Mr. Anderson also represents that "the Chinese consulate has been issuing travel documents in cases such as this and the Chinese consulate has not said they will not issue a document in this case." (Anderson Decl. ¶ 22). Petitioner conversely represents that "[u]pon information and belief, China has stopped issuing travel documents to detained Chinese nationals with final deportation orders." (Petition ¶ 10). Petitioner presently remains in a detention facility in Newton, New Jersey. (Petition ¶ 11(b)).

## II. Discussion

Petitioner alleges that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner argues that although *Zadvydas* established a presumptively reasonable six-month period for the government to attempt to secure an alien's removal, "where, as here, China is not accepted [*sic.*] any of its nationals from the United States, then there is no purpose in waiting for the full six-months." (Petition ¶ 11(a)).

Under the Immigration and Naturalization Act ("INA"), once an alien has been determined to be inadmissible and ordered removed, the alien initially may be detained for a ninety-day period following the final order of removal. 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(1)(B)(I). Certain aliens, including "[a]n alien ordered removed who is inadmissible under section 1182 of this title", a category which includes Petitioner[1], may be detained beyond the original 90-day period. 8 U.S.C. § 1231(a)(6); *Clark v. Martinez*, __ U.S. __, 125 S.Ct 716, 722 (2005) (holding that Zadvydas, infra, is applicable to inadmissible aliens ordered removed pursuant to 8 U.S.C. § 1182); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The presumptively reasonable period to detain an alien under such circumstances is six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* After the six-month period, the alien bears the burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. If the alien successfully makes that showing, "the Government must respond with evidence sufficient to rebut that showing." *Id.* "Therefore, in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002); see

---

[1] Petitioner's "Notice to Appear" and "Warrant of Removal/Deportation" reflect that Petitioner was ordered removed under Section 212(a)(7)(A)(i)(I) of the Immigration and nationality Act, which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Anderson Decl. Exs. A (Notice to Appear), B (Warrant of Removal/Deportation)).

*also Nma v. Ridge*, 286 F. Supp. 2d 469, 474 (E.D. Pa. 2003).

In the case at hand, Petitioner states that his order of removal became final on January 28, 2005.  (Petition ¶ 12; *see also* Answer at 3).  Assuming that to be accurate, the six-month presumptively reasonable period of detention ordinarily would have expired on July 28, 2005.  (Petition ¶ 12; Answer at 3).  Under that calculation, Petitioner's filing of his Petition on May 5, 2004 was premature.  Moreover, as discussed above, Petitioner initially refused both to complete a required application form for his Chinese travel documents and to cooperate in providing a fingerprint and a signature Form when initially served with Form I-229(a).  (Anderson Decl. ¶¶ 9-10).  Only on or about April 12, 2005 did Petitioner finally complete travel document forms for the Chinese Embassy and participate an interview by the Chinese Consulate.  (Anderson Decl. ¶¶ 16-17).  Accordingly, until April 12, 2005, Petitioner had caused the continued detention and had prevented resolution either through removal or a finding that removal is unlikely.  Significantly, an extended period of detention under such circumstances is required:  the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C); *see also Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003) ("*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."); *Riley v. Green*, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) (holding that alien who refused to cooperate can be held in excess of 90-day period);

6

*Sango-Dema v. District Director*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (same).  If the Court calculates the presumptively reasonable period from the date on which Petitioner finally cooperated with the authorities, it will expire on November 12, 2005.  Under either calculation, Petitioner's filing was premature.[2]

     Notwithstanding Petitioner's premature filing, he will shortly have been in custody beyond six months under both calculations and the Court will proceed, *arguendo*, as though the petition were timely under *Zadvydas*.  As a result, the Court must consider whether Petitioner has provided evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  In short, Petition has provided no such evidence.  Petitioner's sole effort in this regard are two unsupported allegations in his Petition:  (1) "[u]pon information and belief, China has stopped issuing travel documents to detained Chinese nationals with final deportation orders" and (2) "where, as here, China is not accepted [*sic.*] any of its nationals from the United States...."  (Petition ¶¶ 10, 11(a)).  Petitioner has not provided any documents, declarations, or other evidence to support his contentions that China has stopped issuing travel document and/or is no longer accepting its nationals from the United States.  Moreover, the length of time that has passed since the request for travel documents was made and the continued contact with the Chinese authorities do not at this time support an inference that travel documents will not be issued.  Accordingly, Petitioner has not shown *good reason* to believe that there is no significant likelihood of removal in the reasonably foreseeable future and, therefore, has failed to satisfy his burden.  See *Joseph v. U.S.*, 127 Fed. Appx. 79, 81 (3d Cir. 2005).  In contrast, it is noteworthy that, as discussed above, Respondents have provided ample evidence

---

[2] Petitioner acknowledges that his Petition was prematurely filed.  (Petition ¶ 11(a)).

demonstrating a significant likelihood of removal in the reasonably foreseeable future, including that once Petitioner's necessary cooperation began, the Department of Homeland Security executed the steps necessary to obtain travel documents for Petitioner and to prearrange for his transport and that there is no reason to believe that China will not issue the requisite travel documents and accept Petitioner.  Petitioner's failure to provide evidence that there is no significant likelihood of removal in the reasonably foreseeable future requires that the petition be denied.

**III. Conclusion**

For the reasons explained above, the petition is denied and the case is dismissed with prejudice.[3]

Dated: October 17, 2005

                                                s/ Joel A. Pisano
                                                JOEL A. PISANO, U.S.D.J.

Orig:   Clerk
cc:     All parties
         File

---

[3] It is unnecessary to enter a certificate of appealability pursuant to 28 U.S.C. § 2253 because any appeal would be from a final order denying a 2241 habeas petition.  *See U.S. v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000); *Ferrante v. U.S. Bureau of Prisons*, 990 F.Supp. 367, 375 n.2 (D.N.J. 1998).